## Case No. 11,797.

### The RICHMOND.

[4 Blatchf. 84.] [1]

Circuit Court, S. D. New York.    Sept. 9, 1857.

SHIPPING — SALE OF WHALING CARGO BY MASTER —SALVAGE—SUIT FOR ADJUSTMENT.

On a libel for the adjustment of salvage, filed by the former owners of the cargo of a whaling vessel, which cargo, on the wrecking of the vessel at Behring's Straits, had been attempted to be sold by her master to the claimants, who brought it to New York and in whose possession it continued, this court, in awarding to the libellants the proceeds of the sale of the cargo by the claimants, after deducting salvage and freight, also allowed to them interest, from the date of such sale, on the amount awarded to them.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel filed in the district court against the cargo of the whaling ship Richmond, for the adjustment of salvage. The vessel was cast away near Behring's Straits, and her cargo of whalebone and oil was there attempted to be sold by her master to parties who brought it to New York. The former owners of the cargo filed the libel, claiming that the sale by the master was void, and that the property was still theirs, and that the parties claiming under the sale were entitled only to salvage. The district court upheld the sale and dismissed the libel. [Case No. 7,491.] The libellants appealed to this court, which declared the sale invalid, and reversed the decree of the district court, and awarded to the libellants the proceeds of the sale of the cargo by the claimants, after deducting one-half of it as salvage, with interest from the date of such sale, on the amount of the recovery. [Case unreported.] On an appeal to the supreme court (Post v. Jones, 19 How. [60 U. S.] 150), that court decided that, in addition to the salvage allowed to the claimants by the circuit court, there must be deducted from the proceeds of the cargo, the freight on it from the Sandwich Islands to New York. The mandate of the supreme court directed that the decree of the circuit court be reversed, and the cause remanded, with directions to have the amount due to each party adjusted according to the principles stated in the opinion of that court. That opinion was silent on the question of interest. On the coming down of the mandate, this court referred it to a commissioner to ascertain the amount due to the parties. His report allowed to the libellants interest, from the date of the sale by the claimants, on the amount awarded to them. To this allowance of interest the claimants now excepted.

Daniel Lord, for libellants.
Charles O'Conor, for claimants.

---

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

---

## Case No. 11,798.

### In re RICHMOND et al.

[18 N. B. R. 362.] [1]

District Court, S. D. New York.    Oct. 28, 1878.

BANKRUPTCY—COMPOSITION MEETING—CREDITORS PRESENT—VOTES.

A creditor who has appeared at any session of the first meeting in composition and taken part in its proceedings, but is not present when the vote is taken, is to be counted as voting against the resolution, unless he has clearly indicated his purpose to withdraw, and not to be counted.

[This was a motion to confirm a composition by Archibald M. Richmond and H. Murray Richmond, bankrupts.]

George E. King and Herbert T. Ketcham, for alleged bankrupts and for assenting creditors.

Melville H. Regensburger, for opposing creditors.

CHOATE, District Judge. This is a motion to confirm a composition. It appears from the report of the register that the first meeting was adjourned from time to time for the examination of the debtors and for other purposes. At the first session two creditors appeared and filed proofs of their claims. The report shows that their appearance was as creditors summoned by the notice, and with a present design of being considered as present at and participating in the meeting. They were not actually present nor represented by proxy at the last session of the first meeting, when the vote was taken on the resolutions accepting the proposed composition. The resolutions were reported by the register as adopted by the vote of the requisite three-fourths in value of the creditors assembled, although, if the claims of these two creditors had been computed in the sum total of the claims of the creditors assembled, there would not have been the requisite three-fourths. These creditors appeared at the second meeting, and took this objection to the regularity of the proceedings because their claims were not counted. The question is whether they should have been considered as present at the first meeting for the purpose of computing the amount of the claims, three-quarters of which in value were requisite to the adoption of the composition. I think it is clear that they should have been considered as present, and their claims computed in the sum total of the claims of the creditors present at the meeting. The statute provides: "And such resolution shall, to

---

[1] [Reprinted by permission.]

be operative, have been passed by a majority in number, and three-fourths in value of the creditors of the debtors as assembled at such meeting, either in person or by proxy," etc. The learned counsel for the debtors insist that the word "assembled" requires that the creditors should be actually present in person or by proxy at the very time the vote is taken, but I think this construction would be too narrow and literal of a statute which must be construed with reference to the subject-matter and the peculiar nature of the proceeding to which it relates. The statute contemplates and provides for proceedings at this meeting of creditors which often protract it to a great length, and render many sessions necessary. In practice it is well understood that the examination of the debtors by one or more creditors often runs through many sessions, while the general purpose of the meeting is finally to act on a single question in which all the creditors have a like interest; yet the proceedings at the meeting are to a great extent, as they are conducted, proceedings between the debtors and particular creditors. It was not the intent of the statute that creditors should be obliged to employ counsel to represent them, nor was it within the contemplation of the statute that they should ordinarily do so. They have a right to appear in person. It is so expressed in the statute. Now, it would to a great extent defeat the beneficial purposes of the act to oblige every creditor who appears to remain through all these proceedings. Every creditor may have and does have the full benefit of all the investigations made at the meeting by every other creditor, but each one is there to look out for his own interest. He may, if he chooses, refuse to join in the composition, whatever may be shown at the meeting. The meeting is not a meeting of judges, to pass on what appears in evidence, but a meeting of creditors, to vote according to their own views of their own interests. I think, therefore, that it would be an entirely impracticable and unreasonable construction of the act to require a creditor who has once appeared at the meeting, and thereby clearly indicated his purpose to be a participant in its proceedings, to remain during all its sittings. It cannot be known when the meeting will be closed and the vote taken; and I think the better view of the statute is that if at any session the creditor appears and makes proof of his debt as part of the proceedings of the meeting, or having at any other time made proof of his debt, appears and indicates his purpose to participate in the meeting, he is to be deemed constructively present till the end; that he is to be regarded as one of the creditors "assembled" at the meeting. And this construction does no violence to the language of the act. Further support is given this view by the fact that the vote is not required to be taken by yea and nay. All creditors present and not voting must

still be counted. It is clear that the requisite majority is three-fourths in value of those who assemble at the meeting. A creditor who has appeared may perhaps withdraw so that he would not be counted, but nothing short of a clear indication to the register, by the creditor, of his purpose to withdraw and not be counted should be sufficient for this purpose. His mere absence, when those creditors who approve the composition are called upon to declare such approval, cannot be taken as indicating any such purpose, but on the contrary, even if he knows that the vote is then to be taken, it only indicates that he has no desire to vote for the composition. Motion denied.